OPINION OF THE COURT
ROSENN, Circuit Judge.
This appeal presents several intricate issues pertaining to the application of the New Jersey Franchise Practices Act (FPA) and the Bankruptcy Code to an automobile dealer contract providing for a right of first refusal (RFR) in the franchisor in the event of the sale of the franchise or its principal assets by the franchisee who subsequently files a petition for bankruptcy. The bankruptcy court determined that appellee General Motors Corporation’s (GM) RFR in its franchise agreement to purchase the dealership assets of its Buick franchisee, Headquarters Buick/Nissan, Inc., (Headquarters) was neither at odds with the FPA nor with the Bankruptcy Code, 11 U.S.C. § 365(f)(1). Therefore, it found that the RFR precluded Hugh M. Leonard, the Trustee for the franchisee, from transferring the Buick franchise to Warnock Automotive Groups, Inc., (War-nock). The district court affirmed.
Warnock and the Trustee appeal from the district court’s judgment affirming the bankruptcy court’s grant of summary judgment in favor of ‘GM. We affirm in part, reverse in part, and remand.[1]
I. BACKGROUND
On December 19, 1990, Headquarters sought bankruptcy protection under chapter 11 of the Code. Subsequently, on May 17, *678 1991, the bankruptcy court authorized the Trustee to enter into an asset purchase agreement with Warnoek. The agreement provided, among other things, that Warnoek would pay $500,000 for the equipment and $250,000 for various intangibles owned by the debtor. It assigned a value of $25,000 to one of the intangibles, the Buick franchise. War-nock was also required to pay approximately $11.6 million over 17'¿ years for the debtor’s leasehold interest, which housed a number of franchises including Buick.
Prior to the court’s approval of the purchase agreement, GM, in a letter dated February 7, 1991, advised the Trustee that its franchise agreement was a personal service contract subject to its RFR. GM reiterated this right in another letter dated April 9, 1991. Finally, at the hearing on May 17, 1991, GM reserved all its rights with regard to the Buick franchise. Section 12.3 of the franchise agreement dealing with the RFR provides:
If dealer submits a proposal for a change of ownership under .Article 12.2, [GM] will have a right of first refusal to purchase the dealership assets regardless of whether the proposed buyer is qualified to be a dealer. If [GM] chooses to exercise this right, it will do so in its written response to Dealer’s proposal. [GM] will have a reasonable opportunity to inspect the assets, including real estate, before making its decision.
Following the court’s approval on May 17, 1991, of the transfer and assignment of all the debtors’ assets, Warnoek submitted an application to GM seeking authorization to become a Buick dealer. The “Buick Zone Office” evaluated the application and ultimately concluded that Warnoek should not be approved.
In its letter to Warnoek, Buick advised that the disapproval was based on Warnock’s poor performance with regard to other GM franchises owned by Warnoek. It also noted, without providing details, that it had “other concerns” with respect to Warnock’s GM franchises. Warnoek challenged GM’s decision and took issue with GM’s characterization of its sales performance. In response, GM directed Warnock’s attention to the first refusal provision which allows GM to exercise its rights “regardless of whether proposed buyer is qualified to be a dealer.” Warnoek persisted in questioning GM’s motives in refusing the transfer. GM responded by revealing that its decision was “based on dealer networking, not financial considerations.”
On September 12, 1991, the Trustee and Warnoek closed the transaction despite GM’s objections to the transfer of the Buick franchise. They agreed, however, to increase the price allocation of the Buick franchise from $25,000 to $150,000. In addition, if eventually the Buick franchise were not transferred because of GM’s exercise of its right of first refusal, the Trustee would reduce the price to be paid by Warnoek by $25,000. Moreover, the Trustee agreed to cooperate with Warnoek in any action it instituted against GM.
In September 1991, the Trustee requested and received leave from the bankruptcy court to commence an action against GM. GM moved for reconsideration which the bankruptcy court denied. It expressly declined to rule on the validity of GM’s right of first refusal.
Thereafter, on February 11, 1992, the Trustee and Warnoek instituted an action against GM in the superior court of New Jersey. GM, pursuant to 28 U.S.C. § 1441, removed the action to the United States District Court for the District of New Jersey. The district court remanded the action to the bankruptcy court for a hearing on the merits. The bankruptcy court requested that the parties file cross-motions for summary judgment. After reviewing all submissions, that court ruled that (1) the RFR was valid and could be exercised at the modified price of $150,000; (2) GM had not waived its RFR; and (3) neither the FPA nor the Code barred GM from exercising its right. On June 19, 1992, the Trustee and Warnoek filed a notice of appeal.
Appellants contend on appeal that the district court erred in affirming the bankruptcy court’s grant of summary judgment. Essentially, they contend that GM’s unfettered right to exercise its RFR is invalid under the FPA. Moreover, they claim that a genuine *679 issue of material fact exists as to. whether GM’s exercise of its right was in bad faith and thus invalid under the FPA. Furthermore, appellants contend that the district court made an improper factual determination that the franchise agreement, was a personal service, contract. This finding resulted in the court’s holding that Section 365(c) of the code, which encompasses personal service contracts, allows GM the right to exercise its first refusal right. Additionally, appellants raise issues of res judicata and es-toppel. They assert that by failing to raise its RFR in bar of the transfer of the Buick franchise at the time the bankruptcy court approved the sale, GM has waived any right to raise it after the sale had already been approved. Finally, at the very least, even assuming GM exercised its right in compliance with the FPA, appellants contend that a genuine issue of material fact exists as to the price GM must pay the Trustee for the assets of the Buick’franchise.
II. DISCUSSION
A. Standard of Review
Because we are reviewing an appeal from the bankruptcy court to the district court which involves not only questions of law but also questions pertaining to findings of fact, we first address our standard of review.'
As an appellate court twice removed from the primary tribunal, we review both the factual and the legal determinations of the district court for error. The district court does not sit as a finder of facts in evaluating them as a court of review, and therefore its evaluation of the evidence is not shielded by the “clearly erroneous” standard of Fed.R.Civ.P. 52(a), which applies only to a trial court sitting as a fact finder..'.. To the extent the parties challenge the choice, interpretation or application of legal precepts, we always employ the fullest scope of review [plenary].... Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir.1981). Thus, summary judgment is appropriate only if there are no genuine issues of material fact and the relevant law entitles the moving party to judgment. Fed.R.Civ.P. 56(e); Carlson v. Arnot-Ogden Memorial Hospital, 918 F.2d 411, 413 (3d Cir.1990). A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
B. The New Jersey Franchise Practices Act
Section 12.3 of the franchise agreement with Headquarters provides that “[i]f dealer submits a proposal for a change of ownership under Article 12.2, [GM] will have a right of first refusal to purchase the dealership assets regardless of whether the proposed buyer is qualified to be a dealer.” (emphasis added). The bankruptcy court concluded that this right of first refusal does not violate the FPA. This is a legal question involving the interpretation of a statutory scheme; it involves no basic or inferred facts beyond the language of the franchise agreement itself, and this language is undisputed.[2] Our review of it is plenary.
The district court first noted that, to the extent that GM’s RFR may be inconsistent with the FPA, the FPA would control despite the franchise agreement’s choice of Michigan law. We agree. See Instructional Systems, Inc. v. Computer Curriculum Corp., 130 N.J. 324, 614 A.2d 124 (1992). This determination is not disputed on appeal. The district court then undertook plenary review of the bankruptcy court’s interpretation of the FPA and, after a much fuller discussion, arrived at the same conclusion that the bankruptcy court did: that GM’s contractual RFR does not violate the FPA. Our review of the district court’s interpretation of the FPA is also plenary. The specific issue of whether an unfettered RFR violates the FPA is an issue of first impression requiring a prediction of New Jersey law.
*680 Appellants contend that “[u]nder the terms of the FPA and the public policy which it embodies, a right of first refusal is not enforceable.”
1. Violation of Express Statutory Provisions
Taking the terms of the FPA first, appellants argue on appeal for the first time that the RFR violates statutory sections 56:10-27 and -28 of the FPA[3]. “We generally refuse to hear issues that are raised for the first time on appeal” unless a “gross miscarriage of justice would occur.” Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir.1976). This is not such a case, and the refusal is doubly sound in the bankruptcy context where there has already been one level of appellate review. We therefore do not address the merits of this contention.
2. Violation of Public Policy
Turning now to their public policy/section 56:10-6 argument, appellants contend that GM’s unrestricted RFR violates public policy. Section 56:10-6 provides in pertinent part:
It shall be a violation of this act for any franchisee to transfer, assign, or sell a franchise or interest therein to another person unless the franchisee shall first notify the franchisor of such intention by written notice setting forth ... the prospective transferee’s name, address, statement of financial qualification and business experience during the previous 5 years. The franchisor shall within 60 days after receipt of such notice either approve in writing to the franchisee such sale ... or by written notice advise the franchisee of the unacceptability of the proposed transferee setting forth material reasons relating to the character, financial ability or business experience of the proposed transferee. If the franchisor does not reply within the specified 60 days, his approval is deemed granted.
N.J.Stat.Ann. § 56:10-6 (1989). For support, appellants cite Bayview Buick-GMC Truck, Inc. v. General Motors Corporation, 597 So.2d 887, 890 (Fla.Dist.Ct.App.1992), a case involving a statutory provision analogous to section 56:10-6. The provision in Bayview gave the manufacturer 60 days to inform the dealer in writing either of its approval of the transfer or of the unacceptability of the proposed transferee, supported by material reasons for the-rejection.
The manufacturer in Bayview failed to inform the dealer of its disapproval; instead, it simply notified the parties involved that it planned to exercise its contractual RFR. Therefore, the anomalous situation arose in which the manufacturer was asserting its RFR in the face of a transfer deemed approved by default. However, the court did not stop at precluding the exercise of the RFR by the franchisor because of its failure to comply with the procedural requirements of the statute. Rather, it concluded additionally as dicta that the RFR was void as against public policy. Presumably, under the court’s broad ruling, the manufacturer would have been precluded from exercising its RFR even if it had first complied with the statute.
*681 In the present ease, however, GM both complied with the statute (at least facially), and exercised its RFR. Therefore, although the contract gives GM an unfettered RFR, GM did not exercise the right in this case in an unfettered manner; rather, it exercised the right in a manner consistent with the FPA.[4] Thus, the issue of the validity of the provision is not properly before the court. We therefore decline to address it. All that is properly before us is whether GM’s conduct violated the FPA.
3. Compliance with Section 56:10-6
GM facially complied with section 56:10-6. Initially, it responded in the prescribed amount of time with a facially acceptable reason (unsatisfactory levels of sales performance in other GM franchises) why Warnoek was not an acceptable transferee. Subsequently, it gave Warnoek additional reasons. Appellants argue, however, that GM acted unreasonably or in bad faith when it responded in this facially correct manner and therefore that it actually did not comply with the FPA. To the extent that the New Jersey courts have interpreted the FPA to impose a requirement of reasonableness on a franchisor’s decision to disapprove a transfer, Simmons v. General Motors Corp., 180 N.J.Super. 522, 435 A.2d 1167, 1177 (N.J.Super.App.Div.), (“In keeping with the sense of the franchise Practice Act, we would hold a franchisor to the reasonable- exercise of discretion in passing upon a proposed transferee.”), certif. denied, 88 N.J. 498, 443 A.2d 712 (1981), we recognize that a genuine issue of material fact exists with regard to the reasonableness of GM’s disapproval of Warnoek. Appellants assert that GM changed its reasons for disapproving the transfer and that the reasons given are not accurate. This raises an issue of material’ fact which requires that the case be remanded to the bankruptcy court. The bankruptcy court should proceed to determine the ultimate fact whether the franchisor failed to exercise discretion and acted unreasonably in disapproving Warnoek.[5]
GM’s argument that it has an independent reason under the franchise agreement and the FPA[6] for rejecting the transferee, namely Wamock’s proposal to relocate, does not change our conclusion because this reason also raises an implicit question concerning the reasonableness of the rejection. Remand to the bankruptcy court is therefore proper to determine whether GM’s disapproval was reasonable.
4. Valuation of the Buick Franchise[7]
Assuming that GM did exercise its RFR in compliance with the FPA, appellants ask us *682 to consider the issue of the price GM intends to pay the Trustee for the Buick franchise. Appellants point to section 12.3 of the franchise agreement, which states that GM “will have a right of first refusal to purchase the dealership assets.” There is no dispute'that the Trustee and Warnock agreed to amend the intangibles provision of the- purchase agreement to allocate $150,000 (instead of $25,000) of the $250,000 total to the Buick franchise. Appellants do dispute, however, that this represents the actual or reasonable value of the Buick dealership assets.
Appellants contend that GM should also pay for part of the lease for the premises of the debtor’s dealerships attributable to the Buick franchise. This lease was undisputedly acknowledged in the bankruptcy court’s early findings of fact to be the greatest asset of the operation as a whole. It seems fair to assume that some pro rata share of the value of that lease was an asset of the Buick dealership for which the franchise agreement obligates GM to pay if it exercises its RFR. If so, such a share would have to be included, above and beyond any amount allocated to the intangible aspect of the Buick franchise, in an actual or reasonable value of the debtor’s Buick dealership assets.
Through this example alone, it becomes obvious that there is indeed a genuine issue of material fact with regard to the •valuation of the Buick dealership assets for purposes of determining what GM must pay to exercise its RFR. Upon remand to the bankruptcy court, the parties should be permitted to present evidence of valuation and the court should decide the appropriate value for the Buick dealership assets.
C. Applicability of Bankruptcy Code § 365
Section 365(f)(1)[8] was designed to prevent anti-alienation or other clauses in leases and executory contracts assumed by the Trustee from defeating his or her ability to realize the full value of the debtor’s assets in a bankruptcy case. Section 365(c)[9] provides an exception to this rule.
Before the bankruptcy court, plaintiffs argued that section 365(f) bars GM’s exercise of its RFR. • The court determined without reference to § 365(e) that § 365(f) does not defeat a RFR because The RFR does not prevent the debtor/trustee from maximizing the amount available to creditors through recovery of the value of assets of the estate in that whatever the sale amount the debt- or/trustee would have received from a proposed transferee, it could nonetheless obtain from the franchisor, GM.
The district court conducted plenary review of this legal issue, and in its analysis, it necessarily undertook an examination of the exception in § 365(c), thus correcting the bankruptcy court’s apparent oversight. After reviewing Third Circuit dicta, the district court concluded that § 365(c) exempts personal service contracts. See In re Taylor, 913 F.2d 102, 106 (3d Cir.1990); In re West Electronics Inc., 852 F.2d 79, 83 (3d Cir.1988). The court correctly observed that whether a contract is personal in nature *683 depends “ ‘upon the nature of the subject of the contract, the circumstances of the case and the intent of the parties to the contract.’” (quoting 2 Collier on Bankruptcy § 365.05 (Lawrence P. King, ed., 15 ed. 1992)). Moreover, “clauses in the contract ... attesting to a personal relationship will not be dispositive.” Id. Among the circumstances to be considered and weighed are the extent of the franchisee’s ownership interest in the specific franchise, the extent to which the nature of the dealership permitted personal service of the franchisee, the multi-franchise character of the operation, the number of employees in the entire dealership operation, and other relevant factors.' Under this standard, the determination is one of fact and the district court, therefore, erred as a matter of law in making the determination in the first instance.
In addition, its reliance on Simmons, to bolster its conclusion that the franchise agreement is a personal service contract, is misplaced. First, whether the franchise agreement before us constitutes a personal service contract is determined under Michigan law in accordance with the choice of law provision in the contract, and not under New Jersey law. Second, the franchise agreement in Simmons is distinguishable in an important respect. In Simmons, the dealer was required to own the entire interest in the dealership. See Simmons, 435 A.2d at 1171. In the case sub judice, however, the dealer was only required to possess a fifteen percent interest. ' Therefore, the agreements are not analogous and the court’s discussion in Simmons regarding the pérsonal service nature of the contract is not determinative.
Because the district court’s holding that § 365 as a whole does not bar GM’s exercise of its RFR was based on its conclusion that the franchise agreement was a personal service contract, it must be reversed. Appellants are entitled to the opportunity to develop the record demonstrating that the franchise agreement did not constitute a personal service contract. The court should make its determination under Michigan law.
D. Waiver and Estoppel
Appellants raised issues of res judicata and estoppel in the bankruptcy court. The res judicata argument is really one of waiver. Taking this argument first, appellants claim that by failing to raise its RFR to block the transfer of the Buiek franchise at the time the bankruptcy court approved the sale, GM has waived any right to raise it after the sale had already been approved. The bankruptcy court decided that the law entitled GM to judgment on this issue. We agree.
The Trustee assumed the debt- or’s contract with GM, and this alone should be sufficient to put the Trustee on notice that GM had a RFR that it could exercise upon receiving notice of the Trustee’s intent to transfer. Additionally, however, GM repeatedly directed the parties’ attention in a series of letters to the RFR provision before the sale was consummated. Further, at a hearing before the bankruptcy court, GM specifically reserved “any rights it has regardless of what’s been said with regard to dealer approval.”[10] ' Moreover, the bankruptcy court specifically warned the parties that, because Wamock agreed to drop a provision in the sale agreement making the sale contingent on the approval of the franchisors involved, any dispute between Warnock and the franchisors would be for another court.
Added to all this, GM’s procedure is to refrain from engaging in approval or RFR deliberations until a proposal for transfer is submitted as required by the franchise agreement, and it made this procedure known. GM, therefore, had no idea until after the sale was approved and closed that it would choose to do either. Finally, after inquiring of GM what steps needed to be taken to effect the transfer, appellants submitted an application to GM, a scenario showing that they did not believe that GM had waived its right to disapprove. If it had not waived its right to disapprove, there was *684 no logical reason for believing it had waived any other right granted by the contract.
The district court affirmed the bankruptcy court. On appeal,' appellants’ arguments with respect to estoppel and waiver are legal in nature. They do not point to any facts that may create a genuine issue of material fact, nor do they suggest that there is other evidence that could be submitted that might raise such an issue.. GM’s conduct was sufficient to preserve its right to exercise its RFR and we perceive no error in the district court’s determination of this issue.
The bankruptcy court does not mention estoppel. The district court concluded that GM was not estopped from asserting its RFR. For the reasons already enumerated above, it hardly appears any estoppel could be at work here. Further, there is no evidence of a misrepresentation, even by silence, on GM’s part that would form the basis of an estoppel argument. GM did not determine that it would either disapprove or exercise its RFR before the sale was approved and concluded.
Therefore, its silence did not operate as a misrepresentation, as the franchisor’s silence did in In re Independent Management Associates, Inc., 108 B.R. 456 (Bankr.D.N.J.1989), where the court rejected the franchisor’s disapproval of a transfer because it sat by, allowing and even encouraging negotiations between the debtor and the proposed transferee, knowing all the while that it would never approve the transfer. Again, appellants point to no new evidence it would like to introduce and no facts that even remotely establish a genuine issue of material fact. Their argument on appeal is legal in nature. We conclude that GM’s conduct provided a sufficient basis to reject appellants’ estoppel argument and that the district court committed no error in this respect.
III. CONCLUSION
In summary, the bankruptcy court determined a number of significant issues as a matter of law when in reality they were dependent upon genuine and disputed issues of material fact. The court concluded as a matter of law that General Motors’ RFR did not violate the New Jersey Franchise Practices Act under its interpretation of the statutory scheme. The district court then undertook plenary review and arrived at the same conclusion. The specific issue of whether an unfettered RFR .violated the FPA is a question that need not be decided because GM did not exercise its RFR in an unfettered manner, but employed it in a manner consistent with the restrictions of the FPA. Thus, it did not violate New Jersey public policy.
Although-GM facially complied with the FPA, appellants argue that in doing so GM acted unreasonably and in bad faith and did not in fact comply with the Act. In this respect, the appellants have raised genuine issues of material fact which the bankruptcy court, as the factfinder, must determine.
Further, there remains the question of the valuation of the Buick dealership assets. The Trustee and Warnock placed a valuation on the Buick franchise but not on the specific value of the dealership assets, and this is a factual matter that must be ascertained before it can be determined what GM must pay for its exercise of its RFR.
Finally, there is the issue arising under § 365(e) of the Bankruptcy Code as to whether the franchise agreement in this instance was a personal service contract. The bankruptcy court did not decide this issue, but upon plenary review the district court concluded that the Code exempts personal service contracts and that the franchise agreement here had such characteristics. The disposition of this issue, however, involves questions of fact which also must be determined by the bankruptcy court.
Summary judgment is therefore precluded as to these matters, although we affirm the district court in all other respects.
Accordingly, the judgment of the district court' will be vacated insofar as it resolved disputed issues of material fact as set forth above and the case remanded with instructions to the district court to remand the case to the bankruptcy court for further proceedings consistent with this opinion.
Each side to bear its own costs.

. The district court exercised jurisdiction pursuant to 28 U.S.C.A. §§ 157 and 1334. This court has jurisdiction pursuant to the bankruptcy appeal provisions of 28 U.S.C.A. § 158(d).

. This question is often used interchangeably with another: whether GM’s exercise of its RFR violated the FPA. This is a different question, however, with a definite factual component.

. Under section 56:10-27, no motor vehicle franchisor is permitted to "offer to sell or sell motor vehicles, to a consumer, other than an employee of the franchisor, except through a motor vehicle franchisee.” NJ.Stat.Ann. § 56:10-27 (1989). Under section 56:10-28, motor vehicle franchisors like GM are not permitted to "own or operate a place of business as a motor vehicle franchisee.” Id. § 56:10-28. Appellants contend that GM's obtaining of the franchise through the exercise of its contractual right of first refusal violates these provisions of the FPA.
Appellants, however, point out no evidence to this court that GM owns or operates a place of business as a motor vehicle franchisee. It certainly is not using the place of business where the debtor operated the business of the Buick franchise because that location is currently occupied by Wamock and is used by Wamock in the operation of the other franchises it obtained from the debtor. Additionally, appellants point to no evidence that GM is attempting directly to sell vehicles to consumers. Instead, they rely on a rather unusual reading of the statute that would make it illegal for GM to own the franchise as an intangible bundle of rights divorced from any functioning business operation. This construction is seriously flawed. On the record before us, GM’s exercise of its first refusal right does not appear to violate these provisions of the FPA. Appellants therefore cannot even rely on this as part of their policy argument.

.To the extent that the district court in its opinion and GM in its brief on appeal rely on Tynan v. General Motors Corp., 591 A.2d 1024 (N.J.Super.App.Div.), certif. denied, 127 N.J. 548, 606 A.2d 362 (1991) and reversed in part not pertinent here, 127 N.J. 269, 604 A.2d 99 (1992), for a contrary outcome, that reliance is misplaced. Tynan is a suit by a rejected proposed transferee against the rejecting franchisor, who, as here, at least facially complied with section 56:10-6. In Tynan, the sale between the proposed transferee and the franchisee was expressly contingent on the franchisor's approval. When the franchisor disapproved under section 56:10-6, the franchisee elected to terminate the sale agreement and to sell to another party. The franchisee did not participate in the suit with the proposed transferee against the franchisor.
There is no basis for using Tynan as a precedent for finding that RFR does or does not violate the FPA and/or its public policy. Although the court made it clear that the FPA does not create or protect rights in a proposed transferee, there is no doubt that the FPA intended to protect franchisees from the arbitrary action of the ffanchi-sor, and in the present case,, the franchisee is also complaining.

. The court would, of course, have to determine what the standard is under New Jersey law for a franchisor’s conduct in disapproving a transfer. This may call for a prediction of New Jersey law. In this context, the court could consider whether the New Jersey Supreme Court would construe the FPA as creating a rebuttable presumption that a proposed transferee is acceptable if it is already a franchisee of the franchisor. See Bay-view, 597 So.2d at 890.

. The FPA provides in pertinent part that "[n]o such transfer ... shall be valid unless the transferee agrees in writing to comply with all the requirements of the franchise then in effect.” NJ.Stat.Ann. § 56:10-6.

. Throughout both the earlier court opinions and the briefs. before this court, a clear distinction between the franchise, meaning the right to operate a dealership under a particular franchisor’s flag, and the franchise, meaning the actual oper *682 ating dealership, has not been made. This failure becomes obvious in the context of this section, where the basic problem is that a value for the intangible right to operate (which seems to include the goodwill built up in the ongoing business) is confused with a value for the business or the business assets.

. Section 365(f)(1) provides in pertinent part:
Except as provided in subsection (c) of this section, notwithstanding a provision in an ex-ecutory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection....
11 U.S.C. § 365(f)(1) (1988).

. Section 365(c) provides in pertinent part:
The trustee may not assume or assign an exec-utory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignments of rights or delegation of duties, if—
(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performances to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.
11 U.S.C. § 365(c) (1988).

. The phrase “regardless of what’s been said* with regard to dealer approval” refers to discussion at the hearing of the terms of the sale agreement between the Trustee and Wamock concerning how their agreement would be modified if franchisor approval was not received for the transfer of any of the franchises involved in the sale.