[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13460
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00866-VEH


SARAH WHITTEN,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 10, 2019)

Before TJOFLAT, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Sarah Whitten appeals the District Court's order affirming the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income. She makes three arguments: (1) the Appeals Council erred by failing to consider new evidence she submitted on appeal, (2) the Administrative Law Judge ("ALJ") improperly evaluated three medical opinions, and (3) the ALJ improperly applied our "pain standard" in evaluating her subjective complaints.

I.

We review a social security case to determine whether the Commissioner's decision is supported by substantial evidence, and we review *de novo* whether the correct legal standards were applied. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). If, in light of the record as a whole, substantial evidence supports the Commissioner's decision, we will not disturb it. *Lewis*, 125 F.3d at 1439. Applying this standard of review, we will not decide the facts anew, make credibility determinations, or re-weigh the evidence. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). If the ALJ commits an error that

2

does not affect the outcome, it's harmless and doesn't require reversal or remand. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).

## II.

We consider each of Whitten's arguments separately.

## A.

First, Whitten argues that the Appeals Council erred by failing to consider the new evidence that she submitted after the ALJ's decision. She has two theories for why the Appeals Council erred. The first theory is that the ALJ's decision is not supported by substantial evidence in light of the new evidence she submitted; that is, she claims the new evidence undermines the ALJ's decision. The Appeals Council erred by not reaching the same conclusion, she says. The second theory is that the Appeals Council did not adequately explain the weight it gave to the new evidence (which included a medical opinion) and the reasons for that weight. We hold that Whitten abandoned both theories by failing to adequately raise them before the District Court.

As a general principle, we will not address an argument in a social security appeal that has not been raised in the District Court. *See Crawford*, 363 F.3d at 1161. For an issue to be adequately raised in the opening brief, it must be plainly and prominently raised and must be supported by arguments and citations to the record and to relevant authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739

3

F.3d 678, 681 (11th Cir. 2014).  Whitten abandoned the first theory because she did not adequately brief it before the District Court.  Indeed, she mentioned the new evidence just once in the argument section of her brief, and she buried it within another argument.  She mentioned the new evidence under this heading: "The [ALJ] commit[ed] reversible error by failing to properly evaluate the opinions of the nonexamining and consultative examiners."  But she submitted the new evidence after the ALJ's decision, so the ALJ could not have erred by failing to consider it.  Plus, Whitten cited no authority and made no legal arguments explaining what the Appeals Council should have done with new evidence.  Thus, she abandoned the first theory.  *See id.* at 682 ("Abandonment of an issue can also occur when passing references appear in the argument section of an opening brief, particularly when the references are . . . 'buried' within [the main] arguments."); *id.* at 681 ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

Whitten abandoned the second theory because she didn't raise it—even in passing or in a perfunctory manner—in her opening brief to the District Court.

### B.

Second, Whitten argues that the ALJ improperly weighed three medical opinions when determining her residual functional capacity ("RFC").  The ALJ

must "state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.  An ALJ considers many factors when weighing medical opinion evidence, including the examining relationship, the treatment relationship, whether the opinion is supported, and whether the opinion is consistent with the record.  *See* 20 C.F.R. § 404.1527(c). The ALJ may discount any medical opinion that is conclusory or inconsistent with the record; the ALJ may also discount a medical opinion when the evidence supports a contrary finding.  *See id.*  The ALJ is not required to refer specifically to every piece of evidence in his decision.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam).  Physicians' opinions about a claimant's abilities and restrictions are relevant evidence, but they're not determinative because the ALJ has the responsibility of assessing the claimant's RFC.  *See* 20 C.F.R. § 404.1527(d); *Lewis*, 125 F.3d at 1440.

We consider each opinion separately.

### 1.

Dr. Morgan examined Whitten one time and never treated her.  In Dr. Morgan's opinion, Whitten could sit for 5 to 10 minutes, stand for 10 to 15 minutes, walk for 10 minutes, and lift or carry 5 pounds for 2 to 3 steps.  The ALJ gave partial weight to Dr. Morgan's opinion.

The ALJ's decision to give partial weight to Dr. Morgan's opinion is supported by substantial evidence for at least three reasons.

First, Dr. Morgan's opinion was not entitled to great weight based on a treating relationship with Whitten because he never treated her. *See Crawford*, 363 F.3d at 1160 (noting that a doctor who examines a claimant just once is not a treating physician and thus that doctor's opinion is not entitled to great weight).

Second, Dr. Morgan's opinion is inconsistent with his clinical findings. Dr. Morgan found that Whitten had normal range of motion throughout her body, except for a slight reduction in her lower back. He also found that Whitten had normal dexterity and grip strength. Finally, Dr. Morgan found that Whitten had full strength in her arms and legs, no significant tenderness over the knees or elbows, and no numbness or tingling in the wrists. These findings of normal or almost normal range of motion and strength are inconsistent with Dr. Morgan's opinion of Whitten's physical limitations.

Third, Dr. Morgan diagnosed Whitten with fibromyalgia, and he apparently based that diagnosis on Whitten's word alone, even though no medical records showed this diagnosis. Thus, this diagnosis is inconsistent with agency guidance because it's not supported by acceptable medical evidence. *See* SSR 12–2p, 77 Fed. Reg. 43640, 43642 (July 25, 2012).

Whitten notes that Dr. Morgan observed "some pain behaviors" during his evaluation, and the ALJ failed to mention this in his decision. Whitten argues that this undermines the ALJ's decision to discount Dr. Morgan's opinion. We disagree. An ALJ need not refer to every piece of evidence so long as his decision is not a wholesale rejection that prevents us from concluding the ALJ holistically considered the claimant's medical condition. *See Dyer*, 395 F.3d at 1211.[1] That is not the case here.

2.

Dr. Bentley examined Whitten one time and never treated her. In Dr. Bentley's opinion, Whitten's psychiatric symptoms would limit her ability to perform complex or repetitive work-related tasks. But, Dr. Bentley concluded, Whitten should have little trouble doing simple work-related activities. The ALJ gave partial weight to Dr. Bentley's opinion.

The ALJ's decision to give partial weight to Dr. Bentley's opinion is supported by substantial evidence for at least three reasons.

First, Dr. Bentley's opinion was not entitled to great weight based on a treating relationship with Whitten because he never treated her. *See Crawford*, 363

---

[1] It seems that the ALJ erroneously discounted Dr. Morgan's opinion because Dr. Morgan did not mention that Whitten received her GED. But this error was harmless because the ALJ gave at least three other reasons—all supported by substantial evidence—for discounting Dr. Morgan's opinion. *See Diorio*, 721 F.2d at 728 (noting that an error is harmless when it doesn't affect the rest of the analysis or the outcome).

F.3d at 1160 (noting that a doctor who examines a claimant just once is not a treating physician and thus that doctor's opinion is not entitled to great weight).

Second, two of Dr. Bentley's diagnoses were based solely on Whitten's subjective complaints and are not supported by other evidence in the record. For example, he noted that Whitten had "probable borderline intellectual functioning," but he never tested Whitten's intelligence functioning. Dr. Bentley also diagnosed Whitten with post-traumatic stress disorder ("PTSD") stemming from sexual abuse that she was subjected to as a child. Dr. Bentley said "[t]here has been continuing evidence of flashbacks and nightmares as well as intrusive thoughts." But none of Whitten's treating providers—before or after Dr. Bentley's evaluation—diagnosed her with PTSD. Nor did Whitten complain of PTSD symptoms to her treating providers. She did complain of hallucinations that happened mostly while sleeping, but she believed a new medication caused the hallucinations. Indeed, she denied hallucinating before she began taking the medication.

Third, Dr. Bentley's opinion is not consistent with other evidence in the record. For example, he concluded Whitten's psychiatric symptoms would limit her ability to perform repetitive work-related tasks. But Whitten testified that she could concentrate well enough to repeatedly put pencils in boxes. And other medical records show that she had normal thought process, thought content, cognition, and memory.

8

Whitten argues that the ALJ erred when he found that she can perform simple, routine, repetitive tasks. After all, Dr. Bentley said that Whitten's psychiatric symptoms would limit her ability to do repetitive tasks. But Dr. Bentley's opinion wasn't determinative because it was the ALJ's responsibility to assess Whitten's RFC. *See* 20 C.F.R. § 404.1527(d); *Lewis*, 125 F.3d at 1440. And Whitten herself testified that she could do repetitive tasks.[2]

3.

Dr. Estock was the state agency medical consultant who reviewed Whitten's medical records and evaluated her mental RFC. In Dr. Estock's opinion, Whitten could complete an eight-hour workday, so long as she was given all customary breaks. He noted that she would function "best" with a flexible schedule in a "well-spaced work setting." Finally, Dr. Estock said Whitten could tolerate "non-intense interaction with members of the general public and coworkers." The ALJ gave great weight to Dr. Estock's opinion.

Whitten argues that the ALJ's decision to give Dr. Estock's opinion great weight is not supported by substantial evidence because Dr. Estock was not a treating physician and because he reviewed an incomplete record. She is right that

---

[2] The ALJ also discounted Dr. Bentley's opinion because Dr. Bentley did not mention that Whitten received her GED. This was an error, but it was harmless because the ALJ gave other reasons—all supported by substantial evidence—for discounting Dr. Bentley's opinion. *See Diorio*, 721 F.2d at 728 (explaining that an error is harmless when it doesn't affect the rest of the analysis or the outcome).

Dr. Estock was not a treating physician, but that's not conclusive.  It's just one factor the ALJ considers.  *See* 20 C.F.R. 404.1527(c) (listing factors).  Another factor the ALJ considers is how consistent a medical opinion is with the entire record.  *Id.* § 404.1527(c)(4).  Here, the ALJ found that Dr. Estock's opinion was consistent with the entire record, and we agree.  Consistent with Dr. Morgan findings, Dr. Estock concluded that Whitten could maintain basic standards of hygiene and grooming.  In turn, he concluded that she could complete an eight-hour workday so long as she received all customary breaks.  Consistent with Dr. Bentley's findings, Dr. Estock concluded that Whitten could complete simple tasks but would have difficulty performing detailed tasks.

Whitten is also correct that the record Dr. Estock reviewed did not include the new evidence that she submitted after the ALJ's decision.  But nothing in the new evidence contradicts Dr. Estock's opinion, and Whitten's own testimony is consistent with Dr. Estock's opinion.  Thus, substantial evidence supports the ALJ's decision to give great weight to Dr. Estock's opinion because it's consistent with the entire record.

Next, Whitten argues that the ALJ's RFC determination failed to fully account for Dr. Estock's opinion.  Specifically, she says the ALJ left out limitations related to a well-spaced work setting, a flexible day schedule, and casual, non-intense interaction with the general public and coworkers.  Dr. Estock

10

said only that Whitten would function "best" in a well-spaced work setting; he did not say that she required a well-spaced work setting to function at all. Thus, the ALJ did not err by leaving out that limitation. And the ALJ properly accounted for the flexible schedule and non-intense interaction with people. On top of normal workday breaks, the ALJ found that Whitten would be off task five percent of an eight-hour workday. The ALJ also found that Whitten could frequently interact with coworkers, but he noted that she should work in small groups and that any criticism should be constructive and non-confrontational. This argument fails.

C.

Third, Whitten argues that the ALJ improperly applied our "pain standard" in evaluating her subjective complaints. A two-part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). The pain standard requires (1) evidence of an underlying medical condition, and (2) either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (b) the objectively determined medical condition must be severe enough that it can reasonably be expected to cause the alleged pain. *Id.*

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must

be obvious as to the credibility finding. *See Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562.

Here, the ALJ found that Whitten's medical impairments could reasonably be expected to cause her complained-of symptoms. But he found that her testimony about the intensity, persistence, and limiting effects of her symptoms was not entirely credible. Doing so, the ALJ applied the correct legal standard. *See* 20 C.F.R. § 416.929(c)(1) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work . . . .").

Substantial evidence supports the ALJ's credibility finding. Whitten's complaints about her knee and shoulder were not supported by clinical findings. And while she alleged that her depression caused certain symptoms, the record shows that she sometimes denied any symptoms flowing from anxiety or depression.

The ALJ did not err in applying our pain standard when evaluating Whitten's subjective complaints.

12

III.

The judgment of the District Court is

**AFFIRMED.**